Zimmerman, J.
It is important to bear in mind that the single question for determination is whether there was a “theft” *18 of the Riley automobile within the meaning, intent and coverage of the “theft” clause of the insurance policy, so as to entitle Riley to recover the value of the automobile from his insurer.
In the case of Toms v. Hartford Fire Ins. Co., 146 Ohio St., 39, 63 N. E. (2d), 909, it is said in the third paragraph of the syllabus:
“In an insurance contract insuring against the ‘theft’ of an automobile, the term ‘theft’ comprehends the wilful taking or appropriation of one person’s automobile by another wrongfully, without justification and with the design to hold or make use of the vehicle in violation of the rights of the owner * * (Emphasis supplied.)
In similar vein, is the statement in 45 Corpus Juris Secundum, 952, 953, Insurance, Section 886, which reads:
“Subject to any definitions set forth in the policy, the words ‘theft,’ ‘robbery,’ * * * ‘larceny,’ * * * or the like, as used in a policy of insurance as descriptive of the perils insured against, are to be given their commonly understood meanings. ‘Theft’ has a very general meaning, and includes any wrongful deprivation of property of another, provided the taking is without claim or color of right.” (Emphasis supplied.)
5 Appleman, Insurance Law and Practice, 356, Section 3211, is authority for the statement that “loss arising from a taking by a former owner under a claim of ownership has been held not covered under such a policy [theft], nor is the taking by any person acting under an honest belief that he is entitled to its possession, even though he resorts to a trick or device to obtain it.”
Language of like import is found in 5 Couch, Cyclopedia of Insurance Law, 4203, Section 1176a.
It is generally recognized that when the buyer of an automobile is in default in the payment of any sum due under a conditional sales contract or a chattel mortgage and by the terms of such instruments a breach has been expressly made a ground for the retaking of the car, the seller may rightfully retake possession thereof, and such action may not be placed *19 within the category of a theft. Such a situation comes within the rule that one is not chargeable with larceny or theft if in good faith he takes property of another, believing it to be legally his own and believing that he has a legal right to its possession. South Carolina Ins. Co. v. Jackson, 103 Ga. App., 3, 117 S. E. (2d), 878.
Other cases enunciate the same principle. For example, see Talasek v. Travelers Fire Ins. Co. (C. C. A. 5), 242 F. (2d), 748; Reece v. Motors Ins. Corp. (D. C. Okla.), 116 F. Supp., 394; Bigus v. Pacific Coast Casualty Co., 145 Mo. App., 170, 129 S. W., 982; Glens Falls Ins. Co. v. Stewart, 127 Misc., 353, 216 N. Y. Supp., 149 (affirmed, 219 App. Div., 817, 220 N. Y. Supp., 858).
In the instant case, the C. S. Hamilton Motor Company had a bona fide and recorded chattel mortgage on the automobile it sold to Mitchell. A certificate of title transferred and delivered to Mitchell in Texas bore the notation of such chattel mortgage and the amount due thereunder. Mitchell defaulted, and it may fairly be inferred from the evidence that he was a crook; that he took the automobile to Alabama and by chicanery and fraud obtained an Alabama title to the car which falsely showed it to be free and clear of encumbrance; that he thereupon sold the car to an Alabama resident, who in turn sold it to an Ohio resident; and that by succeeding transfers of title it came into Eiley’s possession. From the defensible standpoint of the C. S. Hamilton Motor Company, it still had a valid claim of record on the automobile, and, under the authorities cited, its action in repossessing it may not be classed as a “theft.”
Both Eiley and the Court of Appeals cite and rely on Kelley Kar Co. v. Finkler, 155 Ohio St., 541, 99 N. E. (2d), 665. However, in that case there was a court proceeding in which it was held by a divided vote of this court that under the Ohio Certificate of Title Act the holder in good faith of an Ohio certificate of title to an automobile showing no liens or encumbrances is entitled to prevail over an out-of-state holder of a subsisting conditional sales contract on the automobile who sought to regain its possession by an action in replevin. The pending ease poses an entirely different problem, as pointed out in the first paragraph of this opinion.
*20 Since its announcement, the Kelley Kar case has been recognized more in its breach than in its observance. See Peters Motors, Inc., v. Rodgers, 161 Ohio St., 480, 120 N. E. (2d), 80; Shaw v. Wearley Motor Co., 173 Ohio St., 185, 180 N. E. (2d), 823; and Atlantic Finance Co., Inc., v. Fisher, 173 Ohio St., 387, 183 N. E. (2d), 135, in the writer’s opinion inadvisedly overruled in Commercial Credit Corp. v. Pottmeyer (this day decided), 176 Ohio St., 1.
And it was held in Automobile Finance Co. v. Munday, 137 Ohio St., 504, 30 N. E. (2d), 1002, that, where a certificate of title is obtained by the false representations of the applicant therefor, it is fraudulent and void ab initio, and no reliance may be placed thereon by anyone.
In summation, under the facts narrated, there was no “theft” of the motor vehicle within the terms of the insurance contract insuring against such contingency, when Hamilton, having a valid, subsisting and recorded mortgage lien on such motor vehicle and in accordance with the conditions of the lien, summarily repossessed the same in Ohio.
Ordinarily, where an insured loses his automobile by having it summarily removed from his possession, as here, a natural inclination is to protect the insured if it can be done on any tenable basis.
However, upon the controlling determination that no “theft” of the automobile in Riley’s possession occurred within the coverage of his insurance policy, the judgment of the Court of Appeals is reversed and final judgment rendered for the defendant insurer.

Judgment reversed.

Matthias, O’Neill and Griffith, JJ., concur.
Taft, C. J., Herbert and Gibson, JJ., dissent.